# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re:  JOSEPH PODZEMNY,                                    No. 11-09-14226 JL

and

7-H CATTLE FEEDERS, INC.,

Debtors.

---

THE SCOULAR COMPANY,

     Plaintiff,

v.                                                         Adversary No. 10-1010 J

DALHART CONSUMERS FUEL
ASSOCIATION, INC. and
7-H CATTLE FEEDERS, INC.,

     Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Dalhart Consumers Fuel Association, Inc.'s

Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, for Abstention

("Motion to Dismiss") filed by Dalhart Consumers Fuel Association, Inc. ("Dalhart"), by and

through its attorneys of record Arland & Associates, LLC (William J. Arland III and Karla K.

Poe).  Dalhart filed a brief in support of the Motion to Dismiss (Docket No. 14).  Plaintiff, The

Scoular Company ("Scoular"), opposes the Motion to Dismiss.  *See* Opposition of The Scoular

Company to Dalhart Consumers Fuel Association, Inc.'s Motion to Dismiss ("Opposition Brief")

(Docket No. 16).  Dalhart filed a reply to Scoular's Opposition Brief.  (Docket No. 18).

Dalhart asserts that this Court lacks subject matter jurisdiction over the claims raised in

this adversary proceeding and requests dismissal; alternatively, Dalhart asserts that this adversary

proceeding is a non-core proceeding and that mandatory abstention is required in accordance with 28 U.S.C. § 1334(c)(2). Scoular characterizes this adversary proceeding as a core proceeding because its Complaint for Declaratory Judgment ("Complaint") includes a claim for recoupment based on pre-petition claims of Scoular against the Debtor, 7-H Cattle Feeders ("7-H"), and pre-petition debts of Scoular owing to 7-H, and because the Complaint requests the Court to determine that the sum of $530,000.00 which is the subject of an ongoing state court action filed by Dalhart against Scoular and Union County Feedlot, Inc. represents an account receivable that constitutes property of 7-H's bankruptcy estate. Dalhart counters that because the Complaint seeks a declaratory judgment determining that Scoular is not liable to Dalhart based on the same state law claim that is the subject of the pending state court action, this adversary proceeding is not a core proceeding and does not fall within the Court's non-core jurisdiction over matters related to 7-H's bankruptcy case. Dalhart argues, alternatively, that if the Court determines that it has non-core jurisdiction over this adversary proceeding, mandatory abstention applies.

After consideration of the Motion to Dismiss, Scoular's opposition thereto, and Dalhart's reply, and being otherwise sufficiently informed, the Court finds that it has subject matter jurisdiction over this adversary proceeding, and that mandatory abstention does not apply. However, because the dispute between Scoular and Dalhart involves non-debtor third parties and concerns the same transaction that forms the basis of the claims raised in the pending state court action, the Court will exercise its discretion in accordance with 28 U.S.C. § 1334(c)(1) to permissively abstain from hearing that portion of this adversary proceeding that requests the Court adjudicate the dispute between Scoular and Dalhart.

BACKGROUND

7-H filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 19, 2009. Pre-petition, Scoular and 7-H bought and sold grain from each other. By a letter dated September 13, 2009 ("Instruction Letter"), 7-H and Union County Feedlot, Inc. ("Union") instructed Scoular to pay Dalhart $530,000 representing amounts Scoular owed to 7-H for grain purchased by Scoular from 7-H.[1] The Instruction Letter recites that "7-H and/or its affiliate Union County Feedlot, Inc. . . . purchased the grain it sold to Scoular from Dalhart Consumers Fuel Association, Inc."[2] Scoular issued a check in the amount of $530,000.00 made payable to Dalhart dated September 15, 2009 ("Dalhart Check"), but later stopped payment on the Dalhart Check.[3] Neither Dalhart nor Scoular were parties to the Instruction Letter. Scoular asserts that at no time was it indebted to Union. Dalhart asserts that it sold corn to Union, that at least $530,000.00 remains due from Union for corn it purchased from Dalhart, that Dalhart did not sell corn to 7-H and had no agreement with 7-H for the purchase of corn, and that Dalhart did not sell corn to Scoular.[4]

Scoular owes 7-H approximately the sum of $723,323.21.[5] Scoular claims a right of recoupment in the amount of approximately $470,999.27 regardless of the outcome of the dispute between Scoular and Dalhart. If Scoular is required to pay $530,000.00 to Dalhart, Scholar asserts a right of recoupment, in an amount, that if allowed would make Scoular a net creditor of the estate instead of a net debtor of the estate in the amount of approximately

---

[1] *See* Instruction Letter, attached as Exhibit A to the Complaint.
[2] *Id.*
[3] *See* Brief in Support of Dalhart Consumers Fuel Association, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction or, Alternatively, for Abstention ("Dalhart Brief"), Exhibit 1 and Exhibit 2 attached to Exhibit A, Affidavit in Support of Dalhart Consumers Fuel Association, Inc.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction, or Alternatively, for Abstention ("Turner Affidavit"); Opposition Brief, ¶¶ 7-8.
[4] *See* Dalhart Brief, ¶¶ 1, 2, and 4; and Turner Affidavit.
[5] See Complaint, ¶22 and J-H Answer ¶13 admitting the allegation.

Case 10-01010-j    Doc 19    Filed 05/03/10    Entered 05/03/10 16:58:49 Page 3 of 15

$252,323.31.[6]  Dalhart asserts no claim against the estate regardless of the outcome of the dispute between Scoular and Dalhart.[7]

Prior to the filing of this adversary proceeding, Dalhart filed a complaint against Scoular and Union County Feedlot, Inc. ("Union") in the 69th Judicial District Court, Dallam County, Texas, as Cause No. 11011 ("Texas Action") alleging claims against Union for breach of contract, to recover on unaccepted instruments, and to recover attorneys' fees; and alleging claims against Scoular to recover on an unaccepted instrument (the "Dalhart Check"), and to recover attorneys' fees.   The complaint filed in the Texas Action includes an allegation that Union transferred its rights in the grain purchased from Dalhart to 7-H without consideration, and that 7-H then sold the grain to Scoular. *See* Exhibit B to Complaint.  7-H was not named as a defendant in the Texas Action due to 7-H's status as a Chapter 11 debtor.  *Id.*

Scoular filed this adversary proceeding against Dalhart and 7-H on January 21, 2010. The Complaint contains two counts:   1) a request for declaratory judgment determining a) that the $530,000.00 which 7-H had directed Scoular to pay Dalhart is an outstanding account receivable that constitutes property of the debtor's bankruptcy estate, b) that Scoular's stop payment on the check issued to Dalhart was legitimate in all respects, c) that Scoular's obligations evidenced by the $530,000.00 account receivable were at all times owing to 7-H and that Scoular at no time undertook any independent obligation to Dalhart, and d) that Scoular has no obligation to Dalhart with respect to the Dalhart Check or otherwise for payment of the grain; and 2) a request for recoupment based on purchases and sales between Scoular and 7-H.

7-H filed an Answer to the Complaint ("Answer").  In its Answer, 7-H admitted, among other things, that it sold grain to Scoular that it had acquired from Dalhart, that the Instruction

---

[6] *See* Complaint, ¶¶21-24.
[7] *See* Dalhart Brief, ¶ 3; Turner Affidavit, ¶ 5.

-4-

Letter attached to the Complaint as Exhibit A is a true and accurate copy of a letter 7-H authorized to be sent to Scoular, and that Scoular is indebted to 7-H. 7-H denies that the amounts claimed due to Scoular are subject to recoupment, and asserts that Scoular was not a creditor of 7-H. 7-H supports Scoular's contention that the receivable owing to 7-H constitutes property of 7-H's bankruptcy estate. At the preliminary hearing on the Motion to Dismiss, counsel for 7-H represented to the Court that 7-H takes no position as to the Motion to Dismiss.[8]

DISCUSSION

Whether the Court Has Subject Matter Jurisdiction Over this Adversary Proceeding

Dalhart requests the Court to dismiss this adversary proceeding for lack of subject matter jurisdiction in accordance with Fed.R.Civ.P. 12(b)(1), made applicable to adversary proceedings by Fed.R.Bankr.P. 7012(b). In considering a motion to dismiss under Fed.R.Civ.P. 12(b), the Court may consider matters outside the pleadings, such as affidavits or other documents, without converting the motion to dismiss into a motion for summary judgment under Fed.R.Civ.P. 56, provided the motion challenges the facts upon which subject matter jurisdiction depends, and provided further that those facts are not intertwined with the merits of the case. *See Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995).[9] Scoular's Complaint for Declaratory Judgment ("Complaint") asserts that this Court has jurisdiction over this adversary proceeding based on 28 U.S.C. §§ 157, 2201, 2202, and further alleges that this adversary proceeding is a core proceeding. *See* Complaint, ¶ 5 (Docket No. 1). Dalhart correctly states that the federal

_____

[8] Counsel for 7-H in this adversary proceeding also represents 7-H in the underlying bankruptcy case.
[9] Dalhart contests the facts upon which subject matter depends, inasmuch as Dalhart appears to argue that its dispute with Scoular does not involve 7-H. Further, Dalhart's Motion to Dismiss does not require the Court to consider the merits of the dispute between Dalhart and Scoular in order to solve the jurisdictional issue. It is, therefore, not necessary to convert the Motion to Dismiss into a motion for summary judgment. In its Opposition Brief, Scoular requested an opportunity to conduct discovery in order to present further evidence in accordance with Fed.R.Civ.P 56(f). Because the Court has not converted the Motion to Dismiss into a motion for summary judgment, Rule 56(f) is inapplicable. The Court would have discretion to allow further evidence if it were necessary to resolve the jurisdictional issue, but because the Court finds that jurisdiction exists, such additional evidence is unnecessary.

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202,[10] is insufficient to confer subject matter jurisdiction on the bankruptcy court. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 95 F.3d 959, 964 (10th Cir. 1996)("The Declaratory Judgment Act does not confer jurisdiction upon federal courts.")(citations omitted). *See also, Winslow v. Romer,* 123 B.R. 74, (D.Colo. 1990)(stating that "[t]he statutes and rules authorizing the court to order injunctive and declaratory relieve do not confer subject matter or personal jurisdiction on the court. . . . [t]hey provide only additional remedies once the movant has otherwise established jurisdiction.")(citations omitted). Consequently, the Court must evaluate its subject matter jurisdiction over this adversary proceeding in accordance with 28 U.S.C. § 1334.

That section provides, in relevant part:

> [T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b).

The congressional grant of jurisdiction to the bankruptcy court under 28 U.S.C. § 1334 is limited. *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1517 (10th Cir. 1990) (stating that "[b]ankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress.")(citation omitted). Pursuant to 28 U.S.C. §157,

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, . . . and may enter appropriate orders and judgments. . . .

28 U.S.C. § 157(b)(1).

---

[10] The federal Declaratory Judgment Act provides, in relevant part:
> In a case of actual controversy *within its jurisdiction* . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . .
> 28 U.S.C. § 2201(a) (emphasis added).

-6-

"Core" proceedings are proceedings which involve rights created by bankruptcy law, or which would arise in a bankruptcy case. *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir. 1990). *See also* 28 U.S.C. § 157(2)(A) - (O) (listing matters included within core proceedings). Bankruptcy courts also have jurisdiction over proceedings that are not core proceedings, but are otherwise "related to" a case under title 11. *See Personnette v. Kennedy (In re Midguard Corp.),* 204 B.R. 764, 771 (10th Cir. BAP 1997). "Non core" proceedings do not invoke substantive rights created by bankruptcy law, and can exist independently from the bankruptcy case. *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987). Proceedings that fall within the bankruptcy court's non-core, "related to" jurisdiction include "suits between third parties which have an effect on the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.5, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995) (citation omitted).

Dalhart asserts that this adversary proceeding does not fall within this Court's jurisdiction because it does not "arise under" title 11 nor "arise in" a bankruptcy case; and does not fall within the Court's non-core, "related-to" jurisdiction because the claims are not related to 7-H's bankruptcy case. Dalhart focuses on that portion of the adversary proceeding that concerns Dalhart's dispute with Scoular. Dalhart characterizes its dispute with Scoular as a statutory breach of contract case that involves two non-debtor entities. Dalhart reasons that the claim concerning the Dalhart Check does not involve 7-H or the bankruptcy estate, and will not impair this Court's administration of the 7-H case, since the claim does not belong to 7-H and any resulting recovery would be paid to Dalhart, not 7-H. Scoular characterizes this adversary proceeding as a "core" proceeding inasmuch as it requests the Court to determine whether the Dalhart Check represents an account receivable that would constitute property of 7-H's bankruptcy estate. Alternatively, Scoular asserts that the proceeding falls within this Court's

related-to jurisdiction because the outcome will affect the administration of the bankruptcy estate.

"[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 874, 994 (3rd Cir. 1984). In *Pacor v. Higgins,* the Third Circuit reasoned that because the controversy between Higgins and Pacor would have no effect on the pending bankruptcy case filed by Manville, a party against whom Pacor had a potential third-party indemnification claim, the action was not sufficiently "related to" the bankruptcy to fall within the bankruptcy court's limited jurisdiction. *Pacor,* 743 F.2d at 995. Dalhart relies on *Pacor*, arguing that its claim against Scoular is not property of 7-H's bankruptcy estate, exists independently of any dispute between Scoular and 7-H, and constitutes what *Pacor* describes as a "mere precursor" to any impact on the bankruptcy estate since any impact on the bankruptcy case is contingent upon the outcome of the dispute between Scoular and Dalhart. Dalhart further argues that, similar to *Pacor,* 7-H will not be bound by principles of res judicata or collateral estoppel because 7-H is not a party to the Texas Action. This Court disagrees that this adversary proceeding, including the dispute between Dalhart and Scoular, falls outside the scope of this Court's "related-to" jurisdiction.

*Pacor* acknowledges that a proceeding "need not necessarily be against the debtor or against the debtor's property" in order to fall within the bankruptcy court's "related to" jurisdiction; it is sufficient "if the outcome *could* alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor,* 994 F.2d at 743 (emphasis added). *See also, Owens-Illinois, Inc. v. Rapid American Corp., (In re Celotex Corp.),* 124 F.3d 619, 626

(stating that "the *Pacor* test does not require certain or likely alteration of the debtor's rights, liabilities, options or freedom of action, nor does it require certain or likely impact upon the handling and administration of the bankruptcy estate."); *In re Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988)(stating that "even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test articulated in *Pacor*.").

This Adversary Proceeding, despite Scoular's attempt to conflate its claims involving 7-H with its dispute with Dalhart, consists of two claims: 1) Scoular's claim for recoupment against 7-H which will determine the amount of its claim against or liability to the bankruptcy estate; and 2) its dispute with Dalhart over the Dalhart Check.

Scoular's claims vis a vis 7-H clearly fall within this Court's subject matter jurisdiction whether they are characterized as core or non-core.[11]  Scoular's request for recoupment will require the Court to determine the amount of Scoular's claim against the bankruptcy estate, if any.  Claims objections fall within the bankruptcy court's subject matter jurisdiction.[12]

Scoular's claim involving its dispute with Dalhart falls within the Court's related-to jurisdiction because it will have a potential impact on the administration of 7-H's bankruptcy estate.  Scoular is both a creditor, and an account-debtor to 7-H.  Whether Scoular were to prevail or lose its dispute with Dalhart in this adversary proceeding, there would be a change in the assets or liabilities of the 7-H bankruptcy estate.  If Scoular were to prevail in its dispute with Dalhart, the $530,000 represented by the Dalhart Check would remain an outstanding account

---

[11] *See* 28 U.S.C. § 157(b)(1)(B) ("allowance of claims against the estate" are core proceedings); *In re Commercial Financial Services, Inc.*, 251 B.R. 397 (Bankr.N.D.Okla. 2000)(noting that "setoff, whether as a defense or as a counterclaim clearly invokes that claims allowance process."); *Syler v. Jean Bob, Inc., (In re Concept Clubs, Inc.),* 154 B.R. 581, 588 (D.Utah 1993)(holding that a counterclaim for setoff "*may* constitute a claim against the bankruptcy estate for jurisdictional purposes." (emphasis in original)); *In re Electric Machinery Enterprises, Inc.,*416 B.R. 801, 871 (Bankr.M.D.Fla. 2009)(finding that recoupment or setoff defense asserted against claims of Chapter 11 debtor constituted a claim against the estate, invoking the equitable jurisdiction of the bankruptcy court and "transforming this proceeding into a core proceeding . . .").

[12] *See,* 28 U.S.C. § 157(b)(1)(B) ("allowance or disallowance of claims against the estate" are core proceedings).

receivable owing by Scoular to 7-H subject to the claimed right of recoupment.  Scoular would

then owe approximately $252,325 to the estate if its recoupment claim were allowed, and more if

its recoupment claim were disallowed, thereby increasing the estate assets available for

distribution to creditors.  If Dalhart were to prevail in this adversary proceeding in the dispute

between Scoular and Dalhart, 7-H's liabilities would increase and its assets would decrease if

recoupment were permitted.[13]  Unlike *Pacor,* where the liability of the debtor was dependent

upon the outcome of the dispute between two non-debtor parties, the outcome of Scoular's

dispute with Dalhart in this adversary proceeding necessarily would affect the administration of

7-H's bankruptcy estate.  The Court is persuaded that this adversary proceeding falls at least

within its non-core "related to" jurisdiction.

<u>Whether the Court Must Abstain Under the Mandatory Abstention Statute</u>

Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding upon a State law claim or State law
> cause of action related to a case under title 11 but not arising under title 11 or
> arising in a case under title 11, with respect to which an action could not have
> been commenced in a court of the United States absent jurisdiction under this
> section, the district court shall abstain from hearing such proceeding if an action is
> commenced and can be timely adjudicated, in a State forum of appropriate
> jurisdiction.

28 U.S.C. § 1334(c)(2).

Mandatory abstention applies only to non-core proceedings. *Bricker v. Martin,* 348 B.R. 28, 33

(W.D.Pa. 2006).  Once the Court has determined that a proceeding falls within the bankruptcy

court's non-core, "related-to" jurisdiction, the Court must abstain provided the remaining

elements under 28 U.S.C. § 1334(c)(2) have been met.   Those elements are:  1) the motion for

abstention must be timely filed; 2) the matter must be based on a state law claim or cause of

---

[13] Based on the evidence before the Court, should Dalhart prevail in the dispute between Scoular and Dalhart,
Scoular would not simply be substituted for Dalhart as an unsecured creditor of the estate because 1) Dalhart has
admitted it has no claim against the 7-H estate, and 2) Scoular, but not Dalhart, asserts recoupment.

action; 3) the action can be timely adjudicated in state court; and 4) there is no independent source of federal jurisdiction that would have permitted the plaintiff to commence the action in federal court in the absence of the bankruptcy. *In re Mobile Tool Intern.,* 320 B.R. 552, 556 (Bankr.D.Del. 2005). All elements must be satisfied in order to grant a party's request for mandatory abstention. *Id.*

The fourth element of mandatory abstention is not satisfied in this case. An action premised on the claims asserted in this adversary proceeding could have been commenced in a federal court absent commencement of the 7-H bankruptcy case based on diversity of citizenship and an amount in controversy in excess of $75,000. *See* 28 U.S.C. § 1332.[14] Scoular is a Nebraska corporation. Dalhart is a Texas corporation. 7-H is a New Mexico corporation. The amount in controversy is more than $75,000.00.[15] Thus, there is complete diversity among the parties to this adversary proceeding and an amount in controversy in excess of the jurisdictional minimum; Scoular could have commenced this proceeding in a federal court without invoking this Court's bankruptcy jurisdiction. Because there is an alternative basis for federal jurisdiction, the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) have not been satisfied.[16]

---

[14] *Cf. In re Warren Producers, Inc.,* 360 B.R. 249, 252-253 (Bankr.W.D.Ky. 2007)(holding that mandatory abstention did not apply where there was an independent basis for federal jurisdiction based on diversity among the parties and an alleged amount in controversy in excess of the jurisdictional minimum); *Mobile Tool,* 320 B.R. at 556 (requirements for mandatory abstention not met where there was complete diversity and sufficient amount in controversy to meet federal jurisdiction requirements under 27 U.S.C. § 1332); *In re Grubbs Const. Co.,* 305 B.R. 476, 481 (Bankr.W.D.Ark. 2003)(finding that mandatory abstention did not apply where there was diversity of citizenship between the plaintiff and the defendants and the amount in controversy was sufficient to confer federal jurisdiction).

[15] *See* 28 U.S.C. § 1332(a) and (c)(providing that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[ ]" and providing further that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . .").

[16] In addition, mandatory abstention does not apply to the extent the claims in this case are "core" claims.

<u>Whether the Court May Abstain Under the Permissive Abstention Statute</u>

Even where mandatory abstention under 28 U.S.C. § 1334(c)(2) is inapplicable, the bankruptcy court may abstain from both core and non-core matters when abstention best serves the interest of justice, judicial economy, or in the interest of comity with the state courts. *See In re Best Reception Systems, Inc.,* 220 B.R. 932, 952 (Bankr.E.D.Tenn. 1998)("[P]ermissive abstention applies to both non-core related and core proceedings.")(citing *Gober v. Terra + Corp. (In re Gober),* 100 F.3d 1195, 1206 (5th Cir. 1996)(remaining citations omitted)). The bankruptcy court can raise the issue of permissive abstention *sua sponte. See Bricker v. Martin,* 348 B.R. at 33 (noting that, unlike the mandatory abstention statute, the permissive abstention statute does not require a motion, which, "by implication, [means that] a bankruptcy court may permissively abstain *sua sponte.*"); *In re Terracor,* 86 B.R 671, n.15 (D.Utah 1988)(noting that "[s]ection 1334(c)(1) allows the court to act in absence of a motion by a party in interest.")(citation omitted).

Permissive abstention is governed by 28 U.S.C. § 1334(c)(1), which provides, in relevant part:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

In considering whether to exercise its discretion to abstain under 28 U.S.C. § 1334(c)(1), the following factors are relevant:

> (1) the effect that abstention would have on the efficient administration of bankruptcy estate; (2) the extent to which state law issues predominate; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the federal jurisdictional basis of the proceeding; (6) the degree of relatedness of the proceeding to the main bankruptcy case; (7) the substance of

asserted "core" proceeding; (8) the feasibility of severing the state law claims; (9) the burden the proceeding places on the bankruptcy court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of parties; (11) the existence of a right to jury trial; and (12) the presence of nondebtor parties in the proceeding.

*In re Commercial Financial Services, Inc.,* 251 B.R. 414, (Bankr.N.D.Okla. 2000)(noting that this "well-worn list of factors . . . was originally established in *Republic Reader's Servic, Inc. v. Magazine Service Bureau, Inc., (In re Republic Reader's Service, Inc.),* 81 B.R. 422, 428-29 (Bankr.S.D.Tex. 1987)).

Factors (2), (4), (5), (6), (10) and (12) weigh in favor of permissive abstention. The dispute between Scoular and Dalhart concerns the application of state law, though the state law at issue is not unsettled or particularly difficult. The Texas Action is already pending and was commenced before the commencement of this adversary proceeding, and Scoular and Dalhart are non-debtor parties. The dispute between Scoular and Dalhart is only "related-to" 7-H's bankruptcy case, and solely raises questions of state law. It also appears that Scoular filed this adversary proceeding in an attempt to litigate its dispute with Dalhart in a forum it perceives to be more neutral. No party has argued that the Texas Action cannot be timely adjudicated. Factor (1), the effect on the efficient administration of the bankruptcy estate, weighs slightly in favor of retaining this proceeding as a whole; however, because the Court will permissively abstain only from the dispute between Dalhart and Scoular, a dispute that is also the subject of the Texas Action, this factor does not outweigh the other factors.

Scoular argues that by not retaining jurisdiction over all the claims raised in this adversary proceeding, it will risk inconsistent rulings and may be subjected to paying the same obligation twice: once to Dalhart (assuming Dalhart prevails in the Texas Action) and once to 7-H (as an outstanding account receivable if 7-H were to assert it was not bound by the result in the Texas Action and could successfully assert that the Texas Court's decision was wrong). This Court is not persuaded that the risk is as great as Scoular would have the Court believe. Further,

-13-

to bind 7-H to the outcome of the Texas Action, Scoular could move for relief from the automatic stay to join 7-H as a defendant in the Texas Action. And in any event even if this Court were to retain jurisdiction over the all claims raised in this adversary proceeding, resolution of the dispute between Scoular and Dalhart would simply depend on which court (either the state court or this Court) entered a judgment first, since the Texas Action has not been stayed by the filing of 7-H's bankruptcy case.

It is Feasible to Sever the Dispute between Scoular and Dalhart from this Adversary Proceeding

Factor (8), which concerns the "feasibility of severing state law claims" "implicitly presupposes that partial abstention may be appropriate." *Bricker v. Martin,* 348 B.R. at 38. Here, given that the Texas Action was commenced before the filing of this adversary proceeding and raises claims that are also raised as part of this adversary proceeding, the Court finds that abstention only with respect to the claims in this adversary proceeding that would be resolved by the outcome of the Texas Action is appropriate. The Court will not abstain as to the claims by Scoular against 7-H, but will stay this adversary proceeding pending the outcome of the Texas Action. Abstaining from that portion of this adversary proceeding that duplicates the claims raised in the Texas Action will not hamper the orderly adjudication of 7-H's bankruptcy case. Once a determination is made in the Texas Action, the remaining claims in this adversary proceeding can be adjudicated.

Based on the foregoing, the Court concludes that the Motion to Dismiss for lack of subject matter jurisdiction will be denied. The Court will exercise its discretion under 28 U.S.C. § 1334(c)(1) to permissively abstain from that portion of this adversary proceeding concerning the dispute between Scoular and Dalhart, and will stay this adversary proceeding pending the

-14-

outcome of the Texas Action.   An appropriate order consistent with this Memorandum Opinion

will be entered.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket: May 3, 2010

Copies to:
Daniel J Behles
Cuddy & McCarthy, LLP
7770 Jefferson NE, Suite 305
Albuquerque, NM 87109
*Attorneys for 7-H Cattle Feeders, Inc.*

Steven Heim
Steven T Waterman
Dorsey & Whitney LLP
136 South Main Street, Suite 1000
PO Box 45925
Salt Lake City, UT 84145-0925
*Attorneys for The Scoular Company*

William J Arland, III
Karla K. Poe
Arland & Associates, LLC
PO Box 1089
Santa Fe, NM 87504-1357
*Attorneys for Dalhart Consumers Fuel Association, Inc.*

-15-